IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LATONYA Y. BUCKNER, Plaintiff, | § | |
| VS. | § | Civil Action No. 3:26-CV-1993-D |
| NATIONSTAR MORTGAGE LLC, et al., Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and state law, defendants Nationstar Mortgage LLC ("Nationstar") and Rushmore Servicing, LLC ("Rushmore") move to dismiss *pro se* plaintiff Latonya Y. Buckner's ("Buckner's") second amended state-court petition ("amended petition") under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons explained, the court grants defendants' motion as to Buckner's federal RESPA claim, declines to exercise supplemental jurisdiction over her state-law claims, and grants Buckner leave to replead.

I

Buckner is the owner of a parcel of real property ("Property") located in Mesquite, Texas.[1] She alleges that she entered into a mortgage loan secured by a deed of trust that

[1]In deciding defendants' Rule 12(b)(6) motion, the court construes Buckner's amended petition in the light most favorable to her, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in her favor. *See, e.g.*, *Lovick v. Ritemoney*

named Nationstar as the beneficiary. Rushmore is the mortgage servicer responsible for handling Buckner's account.

In 2022 Buckner became seriously ill and unable to work. She sought assistance and was approved for a loan modification. In 2025 Buckner experienced a separate hardship when she was laid off from work. She again requested assistance, but, according to Buckner, Rushmore "improperly claimed she could not receive another modification." Am. Pet. at 3. Although Buckner provided information showing that her hardship was different, defendants failed to reconsider.

Buckner submitted a Qualified Written Request ("QWR") seeking an accurate loan balance, explanation of charges, and loss mitigation options, but defendants failed to properly respond, investigate, or correct errors. In addition, defendants failed to maintain accurate records.

Defendants proceeded with a "foreclosure process."[2] *Id.* at 4. Following the foreclosure activity, an individual named Armando Morzuo ("Morzuo") "began appearing at the [Property] claiming rights or ownership associated with the foreclosure sale," and delivered a 72-hour eviction notice in an attempt to force Buckner from the Property. *Id.* Buckner disputes the validity of the foreclosure and any ownership interest allegedly transferred through the challenged foreclosure proceedings.

---

*Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[2]Buckner contends in her response to defendants' motion to dismiss that the Property was "ultimately sold through foreclosure." P. Br. (ECF No. 13) at 9.

On April 23, 2026 Buckner sued Nationstar and Rushmore in state court. In her amended petition, which is the operative pleading, Buckner alleges claims against Nationstar, Rushmore, and Morzuo for violations of RESPA, improper loan servicing, breach of contract, wrongful foreclosure, and negligence. On June 17, 2026 Nationstar and Rushmore—the only defendants who have been served[3]—removed the case to this court based on federal question jurisdiction. They now move to dismiss the amended petition under Rule 12(b)(6). Buckner opposes the motion, which the court is deciding on the briefs, without oral argument.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a motion to dismiss, Buckner must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability

---

[3]It does not appear that Buckner ever served Morzuo with process. If she includes Morzuo as a defendant in her third amended complaint, which the court today is permitting her to file, she must serve him with process, i.e., the summons and complaint, as required under Rule 4.

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court begins with Buckner's RESPA claim, which is based on allegations that defendants failed to respond to her QWR, failed to properly investigate account errors, and failed to evaluate her for loss mitigation, despite a valid hardship.

A

Defendants move to dismiss Buckner's RESPA claim on the ground that she has not plausibly alleged that she submitted a QWR, as defined by the statute, and has not plausibly alleged that defendants failed to properly respond.

Section 2605(e) of RESPA describes the duty of a loan servicer to respond to borrower inquiries and provides that if a "servicer of a federally related mortgage loan

receives a [QWR] . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days . . . unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). To state a claim under § 2605(e), a plaintiff must plead that her correspondence met the requirements of a QWR, that the defendant failed to make a timely response, and that this failure caused her actual damages. *Williams v. Wells Fargo Bank, N.A.*, 560 Fed. Appx. 233, 241 (5th Cir. 2014) (per curiam) (citing 12 U.S.C. § 2605(e), (f)).

"To be considered a QWR under RESPA, the letter must relate to 'servicing' the loan." *Abor v. Planet Home Lending LLC*, 2025 WL 2945855, at *9 (N.D. Tex. Sept. 17, 2025) (McKay, J.) (citation omitted), *rec. adopted*, 2026 WL 196606 (N.D. Tex. Jan. 26, 2026) (Boyle, J.). "[A] request for a loss mitigation review and retention options does not relate to servicing of the loan." *Banks v. Wells Fargo Bank N.A.*, 2018 WL 1427079, at *3 (N.D. Tex. Mar. 21, 2018) (Boyle, J.). Accordingly, to the extent that Buckner alleges that her request for "[l]oss mitigation options" constitutes a QWR, her claim under § 2605(e) fails.[4] *See, e.g.*, *Vanbaulen v. Wells Fargo Fin. Tex., Inc.*, 2020 WL 1817311, at *6 (E.D. Tex. Mar. 13, 2020), *rec. adopted*, 2020 WL 1812671 (E.D. Tex. Apr. 9, 2020) ("A request for a loss mitigation review does not relate to servicing of a loan. Consequently, to the extent Plaintiffs argue any request for loss mitigation qualifies as a qualified written request,

---

[4]To the extent that Buckner's request for an "[e]xplanation of charges" or an "[a]ccurate loan balance" relates to something *other than* her request for loss mitigation, it is possible that Buckner could plead a claim under § 2605(e). But Buckner has not alleged sufficient facts for the court to make this determination.

Plaintiffs['] claim must fail.").

In addition, Buckner's conclusory assertion that "Defendants failed to properly respond, investigate, or correct errors," Am. Pet. at 4, is insufficient to plausibly allege that Rushmore—the alleged servicer of her loan—failed to comply with its statutory obligations under § 2605(e). *See, e.g.*, *Wilson v. Carrington Mortg. Servs. LLC*, 2025 WL 106428, at *5 (W.D. La. Jan. 15, 2025) ("Simply stating that the Petition says the Defendant 'failed to respond' to QWRs without any facts to support how they achieved such a violation does not constitute 'well-pleaded' factual allegations that can establish a plausible right to relief."). And Buckner has failed to allege any damages as a result of the purported failure to properly respond to her written correspondence. *See, e.g.*, *Hill v. Lakeview Loan Servicing, LLC*, 2023 WL 3237508, at *5 (N.D. Tex. May 3, 2023) (O'Connor, J.) ("[T]o survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege actual damages resulting from a violation of § 2605.").

Accordingly, Buckner has failed to state a claim under § 2605(e) on which relief can be granted, and defendants are entitled to dismissal of this claim.

B

Defendants next contend that Buckner's conclusory allegation that they failed to properly investigate account errors does not state a claim for violating RESPA because Buckner "does not ever allege that RESPA actually requires loan servicers to investigate alleged account errors, much less identify the section or provision of RESPA which sets forth this obligation," and, additionally, "pleads absolutely no facts, whatsoever, regarding what

'accounting errors' Defendants allegedly failed to investigate." D. Br. (ECF No. 8) at 5. The court agrees. Buckner's allegation that defendants violated RESPA by "failing to properly investigate account errors," Am. Pet. at 5, is insufficient, without more, to plausibly allege a violation of RESPA.

C

Defendants contend that Buckner cannot plead a viable RESPA claim based on the allegation that they "failed to evaluate [her] for loss mitigation despite a valid hardship," Am. Pet. at 5, because (1) Buckner has not alleged that she timely submitted a complete loss mitigation application and (2) RESPA's loss mitigation procedures only apply to a borrower's first loss mitigation application,[5] and Buckner's RESPA claim is based on a request for a subsequent loan modification. The court agrees.

The regulation governing loss mitigation applications, 12 C.F.R. § 1024.41,[6] specifies

---

[5]Under an earlier version of 12 C.F.R § 1024.41(i), a servicer was "only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account." 12 C.F.R. § 1024.41 (effective January 10, 2014 to October 18, 2017). But under the current regulation,

> [a] servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application.

[6]A violation of 12 C.F.R. § 1024.41 is actionable through RESPA, 12 U.S.C. § 2605(f). *See* 12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. [§] 2605(f).").

deadlines for reviewing timely loss mitigation applications and requirements for notifying borrowers in writing, within 30 days of receipt of a complete loss mitigation application, which loss mitigation options, if any, a loan servicer will offer the borrower, or the specific reasons for denying a complete loss mitigation application. *See* 12 C.F.R. § 1024.41(c)(1)(ii), (d). But § 1024.42 only applies where "a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale." 12 C.F.R. § 1024.41(c)(1). Buckner does not allege that she submitted a complete loss mitigation application with respect to the "2025 Hardship." Am. Pet. at 3. She only asserts that she "again requested assistance" and that she "provided information showing her hardship was different." *Id.* at 3-4. These allegations are insufficient to plausibly plead that Buckner submitted a complete loss mitigation application, as required by the statute. *See, e.g.*, *Wingfield v. Carrington Mortg. Servs., LLC*, 2015 WL 4886462, at *2 (N.D. Tex. Aug. 13, 2015) (McBryde, J.) (dismissing claim for violation of 12 C.F.R. § 1024.41 because "plaintiffs have not alleged that they submitted a complete application requesting loss mitigation review so as to give rise to any obligation by defendant.").

Even assuming *arguendo* that Buckner *did* plausibly plead that she submitted a complete loss mitigation application with respect to the "2025 Hardship," Buckner's claim would nevertheless fail for a different reason. To successfully plead a claim under § 1024.41 Buckner must, among other requirements, allege facts establishing that "the loan modification application [she] submitted . . . was [her] first complete loss mitigation application . . . [or] that [she] became current on [her] payments after [Defendant] considered

any previous complete loss mitigation application." *Ruiz v. PennyMac Loan Servs., LLC*, 2018 WL 4772410, at *2 (N.D. Tex. Oct. 3, 2018) (Fitzwater, J.) (citing *Solis v. U.S. Bank, N.A.*, 726 Fed. Appx. 221, 223 (5th Cir. 2018)). Buckner alleges that she obtained a loan modification in 2022. But she does not allege that she became current on her payments after that application. She only asserts that she "complied" with the 2022 loan modification "and made the required payments." Am. Pet. at 3. These allegations are insufficient. *See, e.g.*, *Ruiz*, 2018 WL 4772410, at *2 ("Ruiz does not allege . . . that the loan modification application he submitted to PennyMac was his first complete loss mitigation application. Nor does he adequately plead that he became current on his payments after PennyMac considered any previous complete loss mitigation application. Ruiz must allege facts that plausibly plead a claim under one of these alternatives in order to state a claim for a violation of § 1024.41 . . . . This ground alone merits dismissal of Ruiz's [RESPA] claim."). Accordingly, for this independent reason, defendants are entitled to a dismissal of Buckner's RESPA claim.

IV

Buckner brings several state-law claims (improper loan servicing, breach of contract, wrongful foreclosure, and negligence) in her amended petition. Defendants move to dismiss these claims on various grounds. Although this court can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), "when all federal claims are dismissed or otherwise eliminated from a case prior to trial, [the Fifth Circuit has] stated that [its] 'general rule' is to decline to exercise jurisdiction over the pendent state law claims."

*McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc). Having dismissed Buckner's federal-law claim, the court in its discretion declines to exercise supplemental jurisdiction over the remaining state-law claims.[7]

V

Although the court is granting defendants' motions to dismiss, it will grant Buckner leave to replead. *See, e.g.*, *In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal). The defects in Buckner's second amended petition are not clearly incurable, and she has not demonstrated that she is unwilling to cure the defects that the court has identified. To the contrary, she explicitly requests leave to amend if the court "determines that any claim requires additional factual specificity." P. Br. (ECF No. 13) at 24. Moreover, as a *pro se* plaintiff, Buckner should be given a fair opportunity to plead her

[7]Defendants invoke this court's federal-question jurisdiction under 28 U.S.C. § 1331 and rely on the court's supplemental jurisdiction over Buckner's related state-law claims. *See* Notice of Removal (ECF No. 1) at ¶ 12. They do not allege that the parties are diverse citizens, and do not invoke this court's diversity jurisdiction under 28 U.S.C. § 1332. Nor is the court able to reasonably infer, based on the allegations in either the notice of removal or the amended petition, that Buckner is a completely diverse citizen from every defendant. *See, e.g.*, *Boone v. Wilson*, 2018 WL 9988322, at *1 (N.D. Tex. Aug. 27, 2018) (Fitzwater, J.).

best case. *See, e.g.*, *Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at *1 (N.D. Tex. Apr. 12, 2004) (Fitzwater, J.) ("Although the court granted Merrill Lynch's motion to dismiss, it gave Robinette one more opportunity to plead his best case, because he was proceeding *pro se.*"). Accordingly, the court will grant Buckner 28 days from the date this memorandum opinion and order is filed to file a third amended complaint. If she fails to replead, the court will dismiss her federal RESPA claim with prejudice and remand her state-law claims to state court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) (holding that a federal district court has discretion to remand a removed case to state court when all federal-law claims have been eliminated and only pendent state-law claims remain).

* * *

Accordingly, for the reasons explained, the court dismisses Buckner's federal RESPA claim, declines to exercise supplemental jurisdiction over her state-law claims, and grants Buckner leave to replead.

**SO ORDERED**.

October 21, 2026.

SIDNEY A. FITZWATER
SENIOR JUDGE